(No. 5866.   October 31, 1933.)

STATE, Respondent, v. JOHN BIGLEY, Appellant.

[26 Pac. (2d) 375.]

Frank L. Stephan and E. D. Reynolds, for Appellant.

Bert H. Miller, Attorney General, and D. Worth Clark and Ariel L. Crowley, Assistants, for Respondent.

GIVENS, J.—November 6, 1931, appellant Bigley, Hugh Coppinger and Ben Lawley planned to burglarize a bank in Hazelton, November 9th. The state contended that Bigley proposed the scheme to Coppinger and Lawley, the defense the contrary. Aside from this conflict, without material dispute, the history of this rather unusual prosecution unfolds as follows:

Pursuant to arrangement, Bigley went in his car, on November 7th, with the other two to Hazelton, and reconnoitered the bank and selected a place in the near-by countryside, where, after the burglary, they were to hide the money and their clothes worn at the time of the burglary, changing to others in which they would return and mingle with the crowd. Thereafter, November 8th, Bigley went to the city and county officers of Twin Falls and told them in detail of the proposed escapade. The officers, after consulting with officers of Jerome county, in which Hazelton is located, in effect advised Bigley to go ahead with his pretended cooperation with Coppinger and Lawley, advising that officers would be at the scene of action to apprehend and arrest Coppinger and Lawley when they should come out of the bank; armed Bigley, with instructions that if he were required to go into the bank, he should arrest his companions. Such ambush was planned and the officers of the bank informed thereof and their conduct outlined.

The burglary took place as planned, Bigley driving Coppinger and Lawley to the bank, where they entered, secured the cash available, and placed the officers of the bank and one unwitting customer in the vault. In the meantime, Bigley, on the outside of the bank, joined the officers. When Coppinger and Lawley came out of the bank, upon the officers' demand that they hold up their hands and surrender, shooting commenced on both sides. Lawley was killed, Coppinger wounded but captured, and the stolen money secured and returned to the bank.

Thereafter ensued the prosecution of Coppinger and Bigley, who were jointly tried as accomplices. During the trial, Coppinger withdrew his plea of not guilty and plead guilty. Bigley was convicted; hence this appeal.

Numerous errors are assigned, but by reason of the conclusion reached, the elucidation of one is sufficient to determine the cause.

The information was in part as follows:

" . . . . That the said Hugh Coppinger and John Bigley, on or about the 9th day of November, 1931, in the County

of Jerome State of Idaho, in company with one Ben Lawley, now deceased, broke and entered into the Hazelton State Bank, at Hazelton Idaho, with the intent to commit a felony to-wit; with the intent to burglarize, take, steal, convert to their own use and carry away money, lawful currency of the United States of America; that the said Hugh Coppinger and John Bigley did burglarize, take, and carry away approximately $1331.01, lawful money of the United States of America, being the property of the Hazelton State Bank, and in the care, custody and control and immediate presence of H. E. Gundelfinger, cashier and agent of the said Hazelton State Bank. All of which is contrary to the form, force and effect of the statute in such case made and provided and against the peace and dignity of the State of Idaho: . . . . ''

Bigley was thus charged with the crime of burglarizing a bank, apparently under, and as claimed by the state, section 25–1110, I. C. A. Defendant contends that such section is unconstitutional because of a defective title. We do not pass on this point, and merely refer to the section to note this: that whether prosecuted under that section or under the general burglary statute, section 17–3401, I. C. A., the information and the statute require, to hold Bigley guilty, that at the time of the offense he have entered, or conspired with his confederates or accomplices to enter, the bank with intent to commit larceny. One of the essential ingredients is the intent to take away personal property with the intention of permanently depriving the owner thereof. (*State v. Grimmett*, 33 Ida. 203, 215, 193 Pac. 380; *State v. Hurst*, 36 Ida. 156, 209 Pac. 724.)

It is the state's contention that Bigley originated the scheme and desired that the crime be consummated in order that he might recover a possible reward for the apprehension of bank robbers or burglars.

If Bigley originated the scheme, and Coppinger and Lawley were merely confederates, under most of the authorities Coppinger's and Lawley's intent would have been limited by Bigley's intent, and if Bigley did not intend to commit a crime, but merely to assist the officers in appre-

hending Coppinger and Lawley, Coppinger and Lawley would not be guilty unless they committed in person every essential ingredient of the crime charged against them. (*People v. Lanzit,* 70 Cal. App. 498, 233 Pac. 816; *Shouquette v. State,* 25 Okl. Cr. 169, 219 Pac. 727; *State v. Decker,* 321 Mo. 163, 14 S. W. (2d) 617; *State v. Hayes,* 105 Mo. 76, 16 S. W. 514, 24 Am. St. 360; 18 A. L. R. 149, note; *State v. Mantis,* 32 Ida. 724, 187 Pac. 268.)

Coppinger, however, both in testimony and by plea of guilty, conclusively established his intent to commit the crime and his consummation thereof.

■ The state argues as to Bigley in its brief in support of its contention that—

"Accordingly, it is not the motive of the officers, nor the apparent motive of Bigley operating with the officers, with which we are concerned, but the *original* (italics ours) felonious intent which carried Bigley through the planning of the crime with Coppinger and Lawley."

And again—"The question reduces itself not to a matter of detail in the conduct of the officers' side of the story, but of corroboration of the testimony of Coppinger that Bigley's was the inciting animus."

Also—"While it may be conceded that Bigley's intent was to cause a trap to be laid for Coppinger and Lawley, nevertheless his intent, and pursuant to that intent, the fact, was the crime was to be committed."

The defect in this reasoning is that Bigley can only be held responsible for his intent at the time the crime was committed, that is, the entering into the bank and taking of the money (*State v. Riggs,* 8 Ida. 630, 70 Pac. 947; 36 C. J., p. 771, sec. 127; 17 R. C. L., pp. 25, 26, sec. 28), and the only evidence in the record of his intent at that time was that while he desired the crime to be fully consummated by Coppinger and Lawley, his intention was not that he should be a participant therein with the intent of permanently depriving the bank of the money to be taken.

■ Though not without conflict, more seeming than real (*State v. Allen,* 47 Conn. 121; *Brady v. State,* (Tex. Cr.

App.) 56 S. W. (2d) 879), the logical rule to be applied, in such circumstances, has thus been stated (*Benavides v. State,* (Tex. Cr. App.) 60 S. W. (2d) 436, 439):

"It is the general rule that, where one who has taken part in the commission of an offense endeavors by his own testimony to show his innocent intent, his relation to the crime becomes a question of fact, and the jury must be called upon to determine whether or not he is an accomplice witness. However, when the innocent intent is shown without controversy by witnesses other than the supposed accomplice, an exception to the rule obtains." (*Pauly v. State,* 93 Tex. Cr. 183, 246 S. W. 375; *Minter v. State,* 70 Tex. Cr. 634, 159 S. W. 286; *Clay v. State,* 40 Tex. Cr. 556, 51 S. W. 212; *Sanchez v. State,* 48 Tex. Cr. 591, 90 S. W. 641, 122 Am. St. 772; *Chitister v. State,* 33 Tex. Cr. 635, 28 S. W. 683; *Howard v. State,* 90 Tex. Cr. 221, 242 S. W. 739, 744.

All of the testimony of Bigley's abandonment of criminal intent was by others than himself, hence under the above rule he could not be held guilty.

█ If Bigley merely entered the scheme to trap or help trap the others he would not be guilty. (*People v. Emmons,* 7 Cal. App. 685, 95 Pac. 1032; 8 R. C. L., p. 128, sec. 105; *State v. Smith,* 33 Nev. 438, 117 Pac 19; *State v Douglas,* 26 Nev. 196, 65 Pac. 802, 99 Am. St. 688; note, 18 A. L. R. 146; note, 66 A. L. R. 478; *People v. Lanzit, supra.*)

█ From the evidence, Bigley no more intended the crime to be consummated with himself as a complete participant therein than did the officers, and if the officers were accomplices because of their participation, there is no evidence other than the testimony of accomplices to sustain the conviction. Needless to say, the state does not take the position that the officers were accomplices.

The cases are numerous holding that though detectives or officers, with knowledge that a crime is proposed, or to be committed, either await developments in order to apprehend, or even facilitate the proposed activities, they may do so without affording the defense an opportunity to claim that

they thus participated with guilty intent or without making themselves liable as accomplices or otherwise. The state's brief contains the following:

"No one has ever denied that Bigley went to the officers of Twin Falls County and outlined to them the proposed bank robbery. Nor has anyone intimated that the officers did not render their active assistance in carrying out the crime. And the motive of the officers in doing so, as amply shown by the record, to apprehend individuals assumed to be responsible for the succession of bank robberies in the vicinity, was laudable, even though . . . . *mistaken*. . . . .''

It having been established and thus admitted so far as the state is concerned, as an indisputable fact, that Bigley did inform the officers as detailed above, and that thereafter the officers consulted with him and directed his activities to continue for the purpose of apprehending Coppinger and Lawley, as was done except for the latter's unfortunate demise, it follows that a new trial would be of no advantage to the state so far as Bigley is concerned.

Judgment reversed, with directions to discharge the defendant.

Budge, C. J., and Morgan, Holden and Wernette, JJ., concur.